# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# ALEXANDRIA DIVISION

| | |
|---|---|
| **ROSELAND PLANTATION, L.L.C.** | **CIVIL ACTION NO. 05-0793** |
| -vs- | **JUDGE LITTLE** |
| **UNITED STATES FISH AND WILDLIFE SERVICE, FARM SERVICE AGENCY, ENVIRONMENTAL SYNERGY, INC., NATIONAL FISH AND WILDLIFE FOUNDATION AND ILLINOVA GENERATING COMPANY** | |

## MEMORANDUM RULING

Before the court is a motion to dismiss for lack of subject matter jurisdiction filed on 28 November 2005 by defendants United States Fish and Wildlife Service and the Farm Service Agency (collectively, the "government") pursuant to Rule 12(b)(1) of the Code of Civil Procedure [Doc. #38]. On 15 December 2005, the plaintiff, Roseland Plantation, L.L.C. ("Roseland"), with leave of the court, filed an amended and restated complaint [#45]. Roseland then filed a memorandum in opposition to the motion to dismiss on 6 January 2006 [#47]. On 10 January 2006, Roseland, with leave of the court, filed a second amended and restated complaint [#53]. The government replied to Roseland's opposition on 12 January 2006 [#55]. Roseland, with leave of the court, filed a second memorandum in opposition to the motion to dismiss on 19 January 2006 [#58]. For the following reasons, the motion to dismiss is GRANTED IN PART and DENIED IN PART.

**FACTUAL BACKGROUND**

Roseland owns approximately 5,000 acres of real property in Concordia Parish ("Roseland Plantation"). One portion of Roseland Plantation is a parcel of land totaling 797.65 acres acquired by Roseland on 6 October 1995 from Claude Lee Rabb and Sheri Wilks Rabb (the "Rabbs"). The Rabbs acquired this property from the government by a quitclaim deed on 3 October 1989. In this quitclaim deed, the government reserved a conservation servitude over a 419.81 acre sub-parcel. Roseland alleges that the government later "purportedly conveyed for consideration the rights to carbon credits generated by trees located on the area affected by the conservation servitude . . . placing a cloud on Roseland's title as Roseland believes it owns the carbon credits generated by the Conservation Servitude." Second Am. and Restated Compl. ¶ 20.

Carbon credits are "unit[s] of carbon stored or sequestered in a carbon sink [such as a tree]." Id. ¶ 23. According to the complaint, these credits "can be used by industrial generators of carbon dioxide to offset their responsibility for greenhouse gas emissions as provided for by the Energy Policy Act of 1992 and/or the Federal Climate Challenge Program and/or the Climate Change Action Plan of 1993." Id.

Roseland alleges that the government "without any prior or later notice to Roseland, purported to alienate, or alternatively, has impaired Roseland's right to transfer, sell, exchange, claim and report carbon credits." Id. ¶ 30. Roseland therefore asks the court for a declaratory judgment stating the following:

> (a) Roseland Plantation is the owner of the carbon credits generated from the Conservation Servitude, (b) [the government] was without authority or capacity to transfer to [a third party] . . . the right to transfer, sell, exchange, claim and report any carbon credits associated with [the burdened property], (c) that as a result of the Memorandum of Agreement, dated October, 1998, between [the government and a third party] and the Memorandum of Agreement, dated August 30, 2001, by and between [the government and the third parties], that there was no transfer, sale or exchange of rights in and to any trees or timber on [the burdened property] or any fruits, benefits or advantages associated therewith, including particularly but without limitation, any carbon credits associated with any trees growing on [the burdened property], and (d) that [the government and the third parties] have no ownership interest in any trees or timber on [the burdened property], the fruits thereof and any benefits or advantages associated therewith, including particularly but without limitation, any carbon credits associated with any trees growing on [the burdened property].

Id. ¶ 43. Roseland seeks a declaratory judgment in Count I and a judgment for breach of servitude obligations in Count II. Count III does not apply to the government and therefore is not addressed in the present motion. The government raises three grounds for dismissal: standing, ripeness, and sovereign immunity.

## DISCUSSION

**I.    Standing**

The government alleges that Roseland lacks standing to bring this complaint because it "can point to no actual or imminent injury." Def.'s Mem. 11 n.10. Federal courts under Article III can only act on "Cases" and "Controversies." U.S. CONST. art. III, § 2, cl. 1.

Standing is a justiciability doctrine that helps to define the types of disputes over

which federal courts have jurisdiction. As the Supreme Court has stated, "[t]hough some of its elements express merely prudential considerations that are part of judicial self-government, the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

This core component requires the plaintiff to demonstrate three things: injury, causation, and redressability. Id. at 560-61; see also Public Citizen, Inc. v. Bomer, 274 F.3d 212, 217 (5th Cir. 2001). "First, the plaintiff must have suffered an injury in fact–an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (citation and internal quotation marks omitted). "Second, there must be a causal connection between the injury and the conduct complained of–the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Id. (alteration in original) (internal quotation marks omitted). "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. at 561 (internal quotation marks omitted).

The amount of evidence needed to meet these requirements varies based on the stage of the litigation. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." Id. (internal quotation marks omitted).

The complaint clearly alleges that the government attempted to transfer the rights to the carbon credits in the property to a third party, and therefore the causation requirement is satisfied. In addition, a declaratory judgment from the court would remove any cloud on the title. The redressability requirement, therefore, is satisfied.

In addressing the injury requirement, the government argues that the court should dismiss Roseland's complaint because at the present time "it is uncertain whether the carbon credits program will be established by the United States, [and therefore] Roseland can point to no actual or imminent injury." Def.'s Mem. 11 n.10. In response, Roseland argues that "knowing of the registration of carbon credits associated with [the burdened property] by others, [it] is prohibited from entering in good faith into a contract with third parties for the carbon credits that are attributable to [the burdened property]." Pl.'s Opp. 9.

"A common idiom describes property as a 'bundle of sticks'–a collection of individual rights which, in certain combinations, constitute property." United States v. Craft, 535 U.S. 274, 278 (2002) (discussing property rights in tax context and analyzing application of federal and state law). This court finds that, while it is not clear at the present time that these credits could be sold, they make up a portion of the bundle of rights in the real property. As such, Roseland has standing.

## II. Ripeness

The government also argues that the court must dismiss the complaint because the issues are not yet ripe for adjudication. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."

Texas v. United States, 523 U.S. 296, 300 (1998) (internal quotation marks omitted).

The government states that because "Roseland has not applied to register carbon credits, nor have they been denied the right to register," the case is not ripe. Def.'s Mem. 11. The government also argues that "[t]he fact that there is a carbon credits registry or that carbon credits are traded or sold, does not mean that carbon credits can be considered to be real property." Def.'s Reply 1-2. In drawing an analogy, the government notes that "[m]any people have speculated on junk bonds, but that does not mean that junk bonds are a real economic commodity. The Plaintiff in this case is attempting to do essentially the same thing as trading in junk bonds, but asks this court to assist in hedging its risk." Id. at 2.

The government's argument reflects a clear misunderstanding of the character of so-called "junk" bonds. "Low-quality bonds, which are also referred to as 'high-yield' or 'junk' bonds, are rated below investment grade, i.e., ratings agencies have determined that the issuing entity is a greater than average credit risk. In order to compensate for the increased risk of default, such bonds must offer a higher interest rate." Bussian v. RJR Nabisco, Inc., 223 F.3d 286, 289 (5th Cir. 2000). A "junk" bond is a debt much like a bank loan, debenture, or car note, only typically with a higher risk for the lender and a correspondingly higher interest rate. The improper transfer of such a debt from one party to another would certainly present a case ripe for adjudication.

The government states that "[i]t is speculative whether carbon credits will ever be allowed by the United States." Def.'s Reply 2. As such, the government appears to argue that this case would not be ripe until some further legislative or executive action occurs. As

6

discussed above, this court finds that the right to report, transfer, or sell carbon credits is a part of the bundle of rights associated with property ownership. It is therefore not necessary to wait to see whether the government will later change the character of that property right.

The government's argument that "[t]he Plaintiff continues to ask this court to issue an advisory opinion regarding the characteristics of ownership of a thing which has not yet and may never come into existence" is unpersuasive. Id. The complaint alleges that the government attempted to transfer ownership of the very thing they now argue "may never come into existence." Id. The case is ripe for adjudication.

### III. Sovereign Immunity

Sovereign immunity is a doctrine under which the government is generally immune from suit in court. Only if the government has waived this immunity can an individual bring suit against the government. In other words, "[a] party may not bring suit against the United States absent an explicit waiver of sovereign immunity by Congress." Drake v. Panama Canal Comm'n, 907 F.2d 532, 534 (5th Cir. 1990). To have subject matter jurisdiction in a case against the government, the plaintiff must identify a proper waiver of sovereign immunity. See id. In the absence of such a waiver applicable to the claims alleged, the court must dismiss those claims.

In the second amended and restated complaint, Roseland offers the Quiet Title Act as the basis for a waiver of sovereign immunity. 28 U.S.C. § 2409a. "The QTA is a waiver of sovereign immunity." Bank One Texas v. United States, 157 F.3d 397, 402 (5th Cir. 1998). The Quiet Title Act states that "[t]he United States may be named as a party

defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest." 28 U.S.C. § 2409a. The ownership of the carbon credits could create a cloud on the title to the real property at issue. As such, sovereign immunity is waived under the Quiet Title Act. To the extent that the government's motion seeks dismissal of Count I, the motion is DENIED.

## IV.  Breach of Servitude Obligations

In addition to the declaratory judgment, Roseland has named the government as a defendant in Count II, which essentially alleges breach of contract. The government seeks to dismiss Count II of the complaint on the basis that "[w]hen a claim for more than $10,000.00 arises primarily from a contractual undertaking, jurisdiction lies in the Court of Federal Claims and not in a district court." Def.'s Mem. 8; see also Blanchard v. St. Paul Fire and Marine Ins. Co., 341 F.2d 351, 357 (5th Cir. 1965) (stating that "claims based upon breach of contract are wholly alien to the Tort Claims Act" and therefore do not implicate tort-based waivers of sovereign immunity).

Roseland states that it does "not oppose the dismissal of Count II, without prejudice for lack of subject matter jurisdiction, so that the merits of the claim set forth in Count II may be asserted in the proper forum." Pl.'s Opp. 7. As such, this count is DISMISSED WITHOUT PREJUDICE.

## CONCLUSION

Based on the foregoing reasoning, the motion to dismiss filed by the government is GRANTED IN PART and DENIED IN PART. With respect to Count I, the motion to dismiss is DENIED. Count II is DISMISSED WITHOUT PREJUDICE.

Alexandria, Louisiana

5 April 2006

_____
F. A. LITTLE, JR.
UNITED STATES DISTRICT JUDGE